FILED

00 JUN 29

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
JUN 29 2000

United States District Court
Northern District of Alabama
Western Division

| | | |
|---|---|---|
| **Anita Harris,** | ] | |
| | ] | |
| Plaintiff(s), | ] | |
| | ] | |
| vs. | ] | CV99-N-0856-W |
| | ] | |
| **Colonial Bancgroup,** | ] | |
| | ] | |
| Defendant(s). | ] | |

**Memorandum of Opinion**

### I. Introduction.

In this employment discrimination action, the plaintiff, Anita Harris, asserts claims against defendant, Colonial Bancgroup, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981. Specifically, the plaintiff contends that she has been subject to disparate treatment on the basis of her race in obtaining leave for medical reasons, job conditions, pay, job responsibilities, and her termination. The plaintiff also alleges a claim for failure to promote based on race, and a claim for retaliation.

The case is presently before the court on the defendant's motion (Doc. No. 30) for summary judgment, filed on February 25, 2000.[1] The motion has been fully briefed and

---

[1] When this motion was filed, this case was assigned to Senior Judge Sam Pointer. Subsequent to Judge Pointer's retirement, the case was reassigned to Chief Judge U.W. Clemon, and has since been reassigned to the undersigned.

upon due consideration, the motion will be granted.[2]

## II. Statement of Facts.[3]

The plaintiff was hired by Colonial Bank as a switchboard operator in 1990. After a few months as a switchboard operator, the plaintiff became a customer service representative and held this position for about four and one-half years. In December of 1994, at the request of the plaintiff, she was transferred to work in retail banking as a branch utility clerk for approximately two months. In March of 1995, the plaintiff went to work for Colonial BancGroup as secretary to Sadie Hughes, vice president and central services manager for Colonial. The plaintiff worked for Ms. Hughes until October of 1996, when Ms. Hughes left and was replaced by Barbara McAlpin. The plaintiff began reporting to Ms. McAlpin, and in July of 1997, the plaintiff was promoted to administrative assistant, where she remained until her last day of work on April 10, 1998. The plaintiff was terminated on August 14, 1998.

### A. Leave.

The plaintiff alleges that she was denied leave on two occasions in April of 1998, based on her race. It is undisputed that on April 6, 1998, a memorandum was issued that specifically stated that "advance notice and prior approval" were required for personal time off, and the plaintiff signed acknowledgment of receipt of this memorandum. Evidentiary

---

[2] Accordingly, defendant's motion (Doc. No. 54) to strike portions of the affidavit of Anita Harris is moot.

[3] The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *Cox v. Administrator U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

submission (Doc. No. 31) tab 1 at exhibit 25. On April 9, 1998, the plaintiff called Ms. McAlpin and asked her if she could come in one hour late because she allegedly needed to pick up her cousin's granddaughter and take her to another relative's house. Ms. McAlpin told the plaintiff she needed to report to work at her normal time because they were short-handed that day due to a tornado that had hit the Birmingham area the night before and several employees were unable to get to work. It is undisputed that the plaintiff reported to work over an hour late that day anyway and was not disciplined. The plaintiff contends that two black employees were required to come to work that day even though they had no electricity while two white employees, Wanda Morris and Becky Higgins, were allowed to take leave. It is undisputed, however, that Ms. Morris actually worked from 8:00 a.m. to 5:00 p.m. on that day, and that Ms. Higgins was allowed to take a personal day because the police were not allowing traffic to leave or enter Ms. Higgins' neighborhood due to unsafe roads.

On April 10, 1998, the plaintiff requested to leave work two hours early allegedly because her brother was having emergency surgery. Gayle Kriegel, the assistant manager in branch support, denied her request because she had not given enough prior notice. The plaintiff alleges that white employees were routinely allowed to take time off on short notice to care for family members. The plaintiff called Renee Lumpkin in Human Resources explaining her situation. Ms. Lumpkin spoke with Dorothy Moseley, Ms. McAlpin's supervisor, and Ms. Lumpkin, Ms. Moseley, Ms. Kriegel and Ms. McAlpin all met to discuss the situation. Ms. McAlpin stated that the plaintiff had told her that her brother was having

surgery on his arm for an injury he sustained five years ago, and Ms. Kriegel stated that the plaintiff only told her that her brother's surgery was personal.

The plaintiff was called into the meeting to clarify her reason for needing to leave early. The plaintiff later told Ms. Moseley and Ms. Lumpkin in private that she felt as if Ms. Kriegel and Ms. McAlpin were calling her a liar. The plaintiff left at her regularly scheduled time that day and never returned to Colonial. She alleges that she did not return to work due to stress after this incident, and a few days later, the plaintiff was admitted to the hospital allegedly for depression due to work-related issues. On May 26, 1998, Dr. Suk Fields wrote a letter to Ms. Lumpkin simply indicating that he had advised the plaintiff to remain on medical leave. Notice of Filing Evidentiary Materials (Doc. No. 49) at tab 18.

### B. Job Conditions.

The plaintiff contends that her work space was too small and that her needs were "unnecessarily overlooked because of her race." Plaintiff's memorandum (Doc. No. 55) at 12. The plaintiff alleges that her "co-worker's work spaces were all larger than the plaintiff's work space." *Id.* The plaintiff admits that Ms. McAlpin agreed that her work space was too small and requested her supervisor, Woody Davis, to increase the size. Apparently, after a year, the plaintiff's work space was increased to accommodate her needs. It is undisputed that the plaintiff never complained to anyone that she believed her requests were delayed because of her race.

### C. Pay.

The plaintiff alleges that she was paid on a lower grade scale than white administrative assistants. Specifically, the plaintiff compares herself to Lynn Chapman and

4

Sandrea Brasher whom she argues were administrative assistants at a grade 8, while the plaintiff held the position of secretary and was paid at a grade 6, even though they all allegedly performed the same duties. It is undisputed that Ms. Chapman and Ms. Brasher were in different departments and reported to different supervisors.[4] Furthermore, it is undisputed that the plaintiff and Ms. Brasher were both moved into pay grade 8 at the same time on June 16, 1997.[5] Affidavit of Renee Lumpkin (Doc. No. 32) ¶ 9.

The plaintiff also argues that she complained to Woody Davis about her grade level and pay, told him that "she felt it was because of her race," and that he did nothing about it. Plaintiff's memorandum (Doc. No. 55) at 7. However, the plaintiff testified in her deposition that she could not remember if she told Mr. Davis that she thought the basis for not raising her grade level and pay was because she was black. Notice of filing (Doc. No. 49) tab 4 at 189.

### D. Job Responsibilities.

The plaintiff argues that supervisory and managerial responsibilities of Barbara McAlpin were assigned to her without compensation based on her race. Although the plaintiff submits evidence to support her claim that she performed specific responsibilities, which she classifies as outside her job description, the plaintiff submits no evidence to

---

[4] Furthermore, the plaintiff states that she "only assumes that [Lynn Chapman] was paid at a higher rate," but puts forth no evidence supporting such an assumption. Plaintiff's memorandum (Doc. No. 55) at 7.

[5] Even though the plaintiff argues that Ms. Brasher was paid $10.25 per hour, citing the defendant's answers to interrogatories in support, (doc. no. 49), exhibit 27, those answers reveal that Ms. Brasher's pay rate was $9.50 - $10.25 **during the past 5 years.** There is no indication that Ms. Brasher was earning $10.25 during the time at issue. The same applies to Gayle Randle whose pay rate was $9.04 - $9.87 during the past five years. *Id.* Finally, Ms. Brasher and Rosemary Hicks, whose rate of pay was $10.75 - $11.06, apparently served as building coordinators during part of the time at issue. Defendant's reply (Doc. No. 56) at 7.

support her contention that she was given more responsibility and not compensated for the extra work because of her race. The plaintiff simply states in her statement of facts that her allegations are based on her beliefs. Plaintiff's memorandum (Doc. No. 55) at 8-9.

### E. Termination.

The plaintiff also alleges that she was subject to disparate treatment when she was terminated on the basis of her race on August 14, 1998. The plaintiff's last day of work at Colonial was April 10, 1998, but she was not terminated until August 14, 1998. It is undisputed that by August of 1998, the plaintiff had exhausted all of her paid and unpaid leave, including her 12 weeks of leave under the Family and Medical Leave Act. Evidentiary submission (Doc. No. 31) tab 1 at 82-83; 111-112. It is further undisputed that Ms. Lumpkin, Ms. McAlpin, and Ms. Moseley recommended plaintiff's termination, and Andrea McCain, Colonial's vice president of human resources, and Woody Davis, senior vice president of Colonial BancGroup, approved the recommendation. Motion (Doc. No. 30) ¶ 74.

The plaintiff does not dispute that at the time of her termination, she had provided no information to Colonial as to when or if she would return to work. Evidentiary submission (Doc. No. 31) tab 1 at 111. Finally, the plaintiff admits that she was actually given 16 weeks of leave by Colonial before she was terminated, and she does not know of any other employee who had been off as long as her and who was not terminated. *Id.* at 81-83; 276.

### F. Promotion.

The plaintiff claims that she was not selected for the position of Branch Support Operations Officer in 1998 because of her race. The position was filled by Ms. Kriegel, whom the plaintiff contends had less experience than herself. The plaintiff argues that Ms. Kriegel did not have experience in the branch support operations department as the plaintiff did, since Ms. Kriegel had been working as a senior business analyst running the day-to-day operations and computer systems of another branch. It is undisputed, however, that Ms. Kriegel was earning $36,851.43 in this position and had worked for Colonial in various other positions for over 20 years, while the plaintiff had been with Colonial for only 8 years in a clerical or support staff capacity and was making $9.54 an hour or approximately $19,850.00 a year at the time of the promotion.

The plaintiff further argues as a basis for her failure to promote claim that Ms. McAlpin had hand-picked Ms. Kriegel without posting the position. It is undisputed, however, that the plaintiff never complained to anyone that she believed she was denied the position because of her race, or that she was even interested in the position. Furthermore, the plaintiff admits that she herself was selected for positions during her employment with the defendant without having to apply for them.

Finally, the plaintiff claims that she trained Ms. Kriegel's predecessor, Kathy Reynolds, and thus, she should have gotten the position. However, the plaintiff admits that the position and job duties which Ms. Kriegel filled changed significantly and the position was not the same job that Ms. Reynolds had held. Evidentiary submission (Doc. No. 31) tab

7

1 at 284-285. Furthermore, the plaintiff testified that she was not sure what Ms. Kriegel's duties were. *Id.* at 285-287.

### G. Retaliation.

The plaintiff alleges that she was not given a job upgrade or promotion in retaliation for participating in an investigation of upper level management. In August of 1996, an independent investigator was retained by the defendant to investigate complaints about certain managers. During the investigation, the plaintiff wrote a memo to Charles Wilkinson with the subject heading "UNFAIR EMPLOYEE TREATMENT." Notice of filing evidentiary materials (Doc. No. 49) at tab 21. The plaintiff stated that she was promised a job upgrade and promotion by Sadie Hughes from secretary to administrative assistant. The plaintiff stated that Mr. Dominescy would not promote the plaintiff because she had been out too much, even though the plaintiff contended that she had been out sick only three times during the year, had taken only seven vacation days, and one personal day. The plaintiff further states in the memo that she "was informed [by Mr. Dominescy via Ms. Hughes] that my job would never be upgraded and I would never be promoted and if I wanted a better job, feel free to bid on one." *Id.* The plaintiff also mentioned in the memo that Ms. McAlpin had spoken up for her and the work she had done. The plaintiff asserted in that memo that Mr. Dominescy was racist and that she believed he would not give her the upgrade because of her race. *Id.*

It is undisputed that after the investigation, Ms. Hughes retired and Mr. Dominescy was terminated. The plaintiff admits that the individuals who conducted the investigation were sincere and professional, she was never threatened because of her participation in

8

the investigation, and she believed that after the investigation there were no managers who remained at Colonial who should not have been allowed to stay. Evidentiary submission (Doc. No. 31) tab 1 at 247, 277-79.

### III. Summary Judgment Standard.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

Once the moving party has met her burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The

9

nonmoving party need not present evidence in a form necessary for admission at trial; however, she may not merely rest on his pleadings. *Id.* at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judges's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11(1983) (indicating the standard for summary judgment is "[s]ubstantively . . . very close" to that for motions for directed verdict). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is "merely colorable, or is not significantly probative,

summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989).

Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are functions of the jury, and, therefore, "[t]he evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## IV. Discussion.

### A. Disparate Treatment.

A plaintiff who alleges disparate treatment based on race under Title VII or § 1981 must prove that the defendant acted with a discriminatory purpose. *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir. 1984).[6] A plaintiff can create a rebuttable presumption of discriminatory intent by establishing a prima facie case, *Young v. General Foods Corp.*, 840 F.2d 825, 828 (11th Cir. 1988), *cert. denied*, 488 U.S. 1004

---

[6] The plaintiff is simply wrong in her assertion that "[i]n order for Ms. Harris to succeed in a disparate treatment claim, she is not required to present evidence of intentional discrimination. *See Spivey v. Beverly Enterprises, Inc.*, 196 F.3d 1309, 1312 (11th Cir. 1999) (citing *Armstrong v. Flowers Hosp., Inc.*, 33 F.3d 1308, 1313 (11th Cir. 1994)." Plaintiff's memorandum (Doc. No. 55) at 16. *Spivey* actually states that "[a]lthough proof of discriminatory intent is necessary for a plaintiff to succeed on a claim of disparate treatment, a claim of disparate impact does not require evidence of intentional discrimination." *Id.* at 1312.

11

(1989), and may establish a prima facie case in one of three ways: (1) by presenting direct evidence of discriminatory intent; (2) by meeting the burden-shifting test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); or (3) by demonstrating through statistics a pattern of discrimination. *See Early v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990). "Direct evidence of discrimination would be evidence which, if believed, would prove the existence of a fact without inference or presumption." *Carter v. City of Miami*, 870 F.2d 578, 581–82 (11th Cir. 1989) (citations omitted). "[O]nly the most blatant remarks, whose intent could be nothing more than to discriminate . . . constitute direct evidence of discrimination." *Id.* at 582. In the present case, the plaintiff has presented no direct or statistical evidence of discrimination by the defendant. Therefore, she must establish a prima facie case of discrimination, if at all, through circumstantial evidence.

Where a plaintiff's discrimination claim is based on circumstantial evidence, the court employs the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, the plaintiff has the burden of establishing a prima facie case of discrimination.[7] "Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The burden of production then shifts to the defendant, requiring it to articulate some "legitimate, nondiscriminatory reason" for the alleged discriminatory employment action. *Id.* "[I]t is possible for the

---

[7] Under this test, the elements of a prima facie case may be modified to fit the circumstances. "The *McDonnell Douglas–Burdine* proof structure 'was never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination.'" *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 594 (11th Cir. 1987) (quoting *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983)).

12

defendant to present such strong evidence of a nondiscriminatory rationale that summary judgment is warranted." *Brown v. American Honda Motor Co., Inc.*, 939 F.2d 946, 950 (11th Cir. 1991) (quoting *Grigsby v. Reynolds Metal Co.*, 821 F.2d 590, 596 (11th Cir. 1987), *cert. denied,* 502 U.S. 1058 (1992)).

Once the defendant presents a legitimate, nondiscriminatory reason for its action, the presumption of discrimination "drops from the case." *Burdine,* 450 U.S. at 255 & n.10. The plaintiff must then prove by a preponderance of the evidence that the reason offered by the defendant was not the true reason for the employment decision, but rather is a mere pretext for discrimination. *McDonnell Douglas,* 411 U.S. at 804. In the Eleventh Circuit, summary judgment for the defendant is inappropriate once a plaintiff has established a prima facie case and there is sufficient evidence to demonstrate the existence of a genuine issue of fact as to the truth of each of the employer's proffered reasons for its challenged actions. *Combs v. Plantation Patterns,* 106 F.3d 1519 (11th Cir. 1997); *Howard v. BP Oil Co.,* 32 F.3d 520 (11th Cir. 1994).

As noted earlier, the plaintiff claims that Colonial took various adverse employment actions against her on the basis of her race. Since the plaintiff alleges disparate treatment, in order to establish a *prima facie* case she must demonstrate that (1) she belongs to a protected class; (2) she was qualified to do the job; (3) she was subjected to an adverse job action; and (4) her employer treated similarly situated employees outside the protected class more favorably. *Holifield v. Reno*, 115 F.3d 1555, 1555 (11th Cir. 1997).

It is undisputed that the plaintiff is a member of a protected class. The court sees no need to address each and every element of the prima facie case for each claim since

13

certain prongs of the plaintiff's *prima facie* case are clearly not established with regard to her allegations. Consequently, there will also be no discussion addressing the remainder of the burden-shifting framework.

### 1. Leave.

The plaintiff's first claim is that Colonial refused to grant her leave on two separate occasions in April of 1998, based on her race. As to the first occasion, on April 9, 1998, the court questions whether the plaintiff was actually subjected to an adverse job action with regard to this complaint since it is undisputed that the plaintiff reported to work over an hour late that day even though she had not been granted leave and was not disciplined. Furthermore, as to the fourth prong, the plaintiff cannot show that Colonial treated her differently from other similarly situated employees. It is undisputed that the plaintiff did not follow the procedure set forth in the April 6, 1998, memorandum requiring advance notice and prior approval for personal time off. The plaintiff argues that two white employees were allowed to take leave on short notice. However, the plaintiff does not dispute that one of those employees, Wanda Morris, actually worked from 8:00 a.m. to 5:00 p.m. on the day at issue. In addition, Becky Higgins, was allowed to take a personal day that day because the police were not allowing traffic to leave or enter Ms. Higgins' neighborhood due to unsafe roads after a tornado had hit her neighborhood the night before. The plaintiff fails to acknowledge that she was not similarly situated with Ms. Higgins in this regard.

As to the second occasion on April 10, 1998, the court finds that the plaintiff cannot establish the fourth prong of the prima facie case. The plaintiff apparently requested to leave work two hours early because her brother was having emergency surgery, and

14

argues that white employees were routinely allowed to take time off on short notice to care for family members. Although the plaintiff characterizes the surgery as "emergency," she does not dispute the fact that Ms. McAlpin and Ms. Kriegel were not aware that the surgery was of an emergency nature. The plaintiff's claim cannot stand as she identifies absolutely no white employees who were similarly situated and were allowed time off in such a circumstance. Accordingly, the plaintiff's disparate treatment claim is due to be dismissed.

### 2. Job conditions.

The plaintiff also claims that the defendant discriminated against her in her job conditions on the basis of her race. Specifically, the plaintiff contends that her work space was too small and that her needs were "unnecessarily overlooked because of her race." Plaintiff's memorandum (Doc. No. 55) at 12. Again, the plaintiff's claims must fail under the fourth prong because she does not identify any white comparators who were treated differently, and only states that her "co-worker's work spaces were all larger than the plaintiff's work space." *Id.*

The court further notes that the plaintiff cannot establish the second prong of her prima facie case, i.e., that she suffered an adverse job action. Even though the plaintiff's requests for a larger work space may have been delayed, she concedes that Ms. McAlpin had agreed that her work space was too small and had made a request that the plaintiff's work space be increased. The plaintiff's work space was eventually increased to accommodate her needs, and during this time, the plaintiff never complained to anyone that she believed her requests were delayed because of her race. Accordingly, the court finds that the plaintiff's disparate treatment claim on this basis is without merit.

### 3. Pay.

The plaintiff also claims that she was discriminated against on the basis of her pay. The plaintiff alleges that she was paid on a lower grade scale as a secretary than white administrative assistants, Lynn Chapman[8] and Sandrea Brasher, who performed the same duties. The plaintiff cannot establish a *prima facie* case because she has not shown that similarly situated employees outside her protected class were paid more than was she.

It is undisputed that Ms. Chapman and Ms. Brasher were in different departments and reported to different supervisors and, thus, were not similarly situated. In fact, Ms. Chapman reported to the highest level manager at the plaintiff's branch, not Ms. McAlpin or Ms. Hughes. Affidavit of Lumpkin (Doc. No. 32) ¶ 9. Furthermore, it is undisputed that the plaintiff and Ms. Brasher were both moved into pay grade 8 at the same time on June 16, 1997, and thus, there appears to be no difference between the plaintiff and this comparator. *Id.*[9] Accordingly, the plaintiff's disparate pay claim must fail.

### 4. Job Responsibilities.

The plaintiff argues that she had supervisory and managerial responsibilities of Barbara McAlpin assigned to her without compensation based on her race. Again, the fourth prong of the prima facie case is not satisfied. Although the plaintiff submitted

---

[8] Furthermore, the plaintiff states that she "only assumes that [Lynn Chapman] was paid at a higher rate," but puts forth no evidence supporting such an assumption. Plaintiff's memorandum (Doc. No. 55) at 7.

[9] As noted above, although the plaintiff argues that Ms. Brasher was paid $10.25 per hour, there is no indication that Ms. Brasher was earning $10.25 during the time at issue. Notice of filing (Doc. No. 49), exhibit 27. In addition, it appears that any increase in Ms. Brasher's or Rosemary Hicks' rate of pay may have been justified since they also served as building coordinators during part of the time at issue, while it is clear that the plaintiff did not serve in any such position. Defendant's reply (Doc. No. 56) at 7.

16

evidence to support her claim that she performed specific responsibilities, which she classified as outside her job description, the plaintiff submitted no evidence to support her contention that she was given more responsibility and not compensated for the extra work because of her race. Specifically, the plaintiff identifies no white comparators who were treated differently. The plaintiff simply asserts in her statement of facts that her allegations are based on her beliefs. The plaintiff's claim clearly fails to meet even the minimum standards for a viable disparate treatment claim.

### 5. Termination.

Finally, the plaintiff claims that Colonial terminated her on August 14, 1998, on the basis of her race for participating in the 1996 investigation. The plaintiff concedes that at the time of her termination, she had provided no information to Colonial as to when or if she would return to work. Evidentiary submission (Doc. No. 31) tab 1 at 111. More importantly, the undisputed evidence makes clear that by August of 1998, the plaintiff had exhausted all of her paid and unpaid leave, including her 12 weeks of leave under the Family and Medical Leave Act. *Id.* at 82-83; 111-112. In fact, the plaintiff admits that she was actually given 16 weeks of leave by Colonial before she was terminated, and she does not know of any other employee who had been off as long as her and who was not terminated. *Id.* at 81-83; 276. Since the plaintiff has not alleged that the policy was applied differently to other employees who had missed the same amount of work, she cannot state a prima facie case of disparate treatment.

### B. Promotion.

Although the plaintiff alleges a disparate treatment claim with regard to her promotion claim, she does not argue that other white employees who were similarly situated as her were promoted while she was not. The plaintiff simply claims that she was not selected for the position of branch support operations officer in 1998 because of her race. Specifically, she alleges that she was discriminated against based on her race when Ms. Kriegel, a white woman, was given the branch support operations officer position instead of herself.

To establish a prima facie case of failure to promote based on race, the plaintiff must prove (1) she is a member of a protected minority (2) she was qualified and applied for the promotion; (3) she was rejected despite these qualifications; and (4) other equally or less qualified employees who were not members of the protected minority were promoted. *Wu v. Thomas*, 847 F.2d 1480, 1483 (11th Cir. 1988). The plaintiff cannot establish a *prima facie* case because she cannot prove that she expressed interest in or was, in fact, interested in the position or that Ms. Kriegel was less qualified than herself.

Even though it is undisputed that the position at issue was not posted, it is also undisputed that the plaintiff never told anyone that she was interested in the position or complained to anyone that she believed she was not given the position because of her race. Furthermore, the plaintiff admits that she herself was selected for positions during her employment at Colonial without having to bid for them. Accordingly, the court finds that the second prong of the prima facie case cannot be met because the plaintiff did not apply for the position or express an interest in filling the position to anyone at Colonial.

As to the fourth prong, the plaintiff contends that Ms. Kriegel had less experience than herself since Ms. Kriegel did not have experience in the branch support operations department as the plaintiff did. However, it is undisputed that Ms. Kriegel had been working as a senior business analyst running the day-to-day operations and computer systems of another branch, was earning $36,851.43 in this position,[10] and had worked for Colonial in various other positions for over 20 years. In comparison, the plaintiff had been with Colonial for only 8 years in a clerical or support staff capacity as an hourly employee and was making approximately $19,850.00 a year at the time of the promotion.

Even though the plaintiff claims that she was more qualified than Ms. Kriegel because the plaintiff had allegedly trained Ms. Reynolds, the plaintiff admits that the position changed significantly when Ms. Kriegel was promoted and that it was not the same job that Ms. Reynolds had held. Evidentiary submission (Doc. No. 31) tab 1 at 284-285. The plaintiff also testified that she was not sure what Ms. Kriegel's duties were. *Id.* at 285-287. Accordingly, the court finds that the plaintiff cannot demonstrate that her qualifications were at least equal to Ms. Kriegel's qualifications, and thus, the plaintiff's promotion claim cannot withstand summary judgment.

### C. Retaliation.

In order to make out a prima facie case of retaliation, the plaintiff must show (1) that she was engaged in statutorily protected expression; (2) that the defendant took an adverse employment action against her; and (3) a causal link between the protected expression and

---

[10] After filling the position at issue, Ms. Kriegel's salary went up to $38,694. Notice of Filing (Doc. No. 49) at tab 16.

the adverse action. *Raney vs. Vinson Guard Service, Inc.,* 120 F.3d 1192, 1196 (11th Cir. 1997).

The plaintiff claims that the defendant refused to give her a job upgrade and promotion in retaliation for participating in the 1996 investigation. Although the plaintiff argues that it was after submitting her memorandum to the investigative team that Mr. Dominescy denied her upgrade to administrative assistant, the plaintiff made clear in the memo that Mr. Dominescy had informed her that he was not going to promote her because the plaintiff missed too much work. Furthermore, Mr. Dominescy had indicated that the plaintiff's *job* would never be upgraded and that if the plaintiff wanted a better job should was free to bid on one. If anything, this statement shows that Mr. Dominescy was not discriminating against the plaintiff based on her race, and that he believed the plaintiff's job itself did not qualify for an upgrade. Accordingly, the court finds no causal link between the plaintiff's memorandum, which was written as part of the investigation, and her denial of a job upgrade, which occurred prior to her writing the memorandum.

### V. Conclusion.

Accordingly, the defendant's motion for summary judgment will be granted and all of the plaintiff's claims will be dismissed with prejudice. The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this 28th of June, 2000.

Edwin L. Nelson
United States District Judge